**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MELINDA A. C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:24-cv-01735 PLC** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Melinda A. C. seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

## I. Background and Procedural History

On August 9, 2022, Plaintiff, who was born in September 1963, filed an application for DIB, alleging she was disabled as of May 1, 2022, as a result of fibromyalgia, chronic bronchitis, "degenerative disease in the spine," gastroesophageal reflux, irritable bowel syndrome, "underline nerve damage [in] right foot," arthritis, peristalsis, "right knee problems sometimes," neck and lower back pain, allergies, asthma, "pain in tail bone," and anxiety. (Tr. 68, 159) The Social Security Administration (SSA) denied Plaintiff's initial claim and upon reconsideration, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 68-76, 77-85, 108-109) The SSA granted Plaintiff's request for review and conducted a hearing on November 30, 2023. (Tr. 31-66)

On February 2, 2024, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 11-30) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6, 156-158) Plaintiff has exhausted all administrative remedies, and the ALJ's February 2024 decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

### A. Plaintiff's Testimony

At the November 30, 2023 hearing, Plaintiff testified that she was sixty years old and lived with her husband. (Tr. 41-42) Plaintiff completed two years of college. (Tr. 42) Plaintiff worked in the banking industry for the final 15 years of her career. (Tr. 44) During this period, she worked as a branch manager, personal banker, loan officer, and teller. (Tr. 44-48) As a branch manager, she supervised between four to seven employees. (Tr. 44-45)

It is difficult for Plaintiff to sit and stand, and she "move[s] around a lot,"due to pain in her low back and tailbone. (Tr. 48, 51) Plaintiff developed arthritis in her tailbone, which did not "heal correctly" after she broke it "years ago," making it "very painful" when she sits. (Tr. 48) Plaintiff receives "shots" for her tailbone pain but "they do not help." (Tr. 48) Plaintiff cannot "stand in one spot" and "rock[s]" to relieve pressure on her low back. (Tr. 51)

Plaintiff's pain medication, which she takes three times day, cause her to become "sleepy and disoriented[,]" and she must lie "down for a while" after taking it. (Tr. 53-54) Her pain medication "helps" some days but not others. (Tr. 53) Plaintiff gets nauseous "very easily," including when bending over. (Tr. 64) Due to her stomach issues and "fatty liver," Plaintiff does not have much warning when she needs to use the restroom. (Tr. 65)

Plaintiff's primary care physician treats Plaintiff's depression and anxiety. (Tr. 49) Plaintiff began taking anti-anxiety medication in 2011 while her husband was in Afghanistan and her doctor diagnosed Plaintiff with generalized anxiety disorder in September 2023. (Tr. 49-50) Plaintiff gets anxiety "very easy now" and has begun having panic attacks. (Tr. 50) Plaintiff began taking a new medication for her mental health conditions approximately four to six weeks earlier and she was unsure if the new medication was more effective. (Tr. 49-50)

Plaintiff can sit in an office chair for thirty minutes before needing to get up and she can walk for thirty minutes before needing to rest. (Tr. 52-53) Plaintiff testified that some days "are just more painful than others" which can make walking difficult. (Tr. 53) Plaintiff tries to shop at smaller stores and, at times, will use an electronic wheelchair while shopping. (Tr. 53) Plaintiff can lift and carry ten pounds. (Tr. 53)

Plaintiff drives "locally" no more than three times per week. (Tr. 42) Plaintiff's husband drives her long distances and "does a lot of [her] normal driving for [her]." (Tr. 42) She helps with household chores and can do the laundry. (Tr. 54) Plaintiff's husband does a lot of the cooking but Plaintiff does "basic cooking" like microwaving meals. (Tr. 54) Plaintiff can make "nice dishes" that do not required her to "stand there and babysit the food." (Tr. 54) She can do the grocery shopping but her husband does most of it. (Tr. 54) Plaintiff has issues with her memory. (Tr. 49) In June 202, Plaintiff went to Branson for a family vacation but she did not go anywhere or do anything at the resort. (Tr. 55)

B. Function Reports

1. October 3, 2022

In an October 2022 function report, Plaintiff reported her daily activities include taking her medication, showering, cleaning the house, doing the laundry, cooking, washing the dishes,

watering the plants, and watching television. (Tr. 216) Plaintiff babysat her grandson a "few days a week/or weekend." (Tr. 216) Plaintiff fed and let her pets outside. (Tr. 216) Plaintiff woke up from pain several times a night. (Tr. 216) Plaintiff spent 20 to 30 minutes weekly preparing "all types" of food. (Tr. 217) Plaintiff cleaned or washed laundry for an hour a day. (Tr. 217) Plaintiff sometimes needed help or encouragement getting out of bed. (Tr. 217) Plaintiff went outside almost daily, and she drove and rode in the car. (Tr. 218) Plaintiff shopped over the phone and in stores twice a month. (Tr. 218) Plaintiff paid bills, counted change, handled a savings account, and used a checkbook. (Tr. 218) Plaintiff enjoyed reading and watching television daily. (Tr. 219) Plaintiff talked with others daily including in person, on the phone, and via text or video chat. (Tr. 219) Plaintiff attended birthday parties a few times a year. (Tr. 219) Plaintiff did not travel much due to pain. (Tr. 219) Plaintiff reported that her conditions affected her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, complete tasks, and concentrate. (Tr. 220) Plaintiff did not report that her conditions affect her ability to remember, understand, follow directions, or get along with others. (Tr. 220)

Plaintiff could walk for thirty minutes before needing to rest for five minutes. (Tr. 220) Plaintiff did not finish what she starts. (Tr. 220) Plaintiff followed directions well but must read written instruction more than once and asked "a lot" of questions when given spoken instructions. (Tr. 220) Plaintiff got along with authority figures. (Tr. 220) Plaintiff did not handle stress or changes in routine well and was always worried about her family and someone breaking into the house. (Tr. 221) Plaintiff took Flexeril which made her very sleepy. (Tr. 222)

2. March 30, 2023

Plaintiff stated her ability to work was limited by her unexpected and uncontrollable diarrhea, her inability to sit for more than "a little while" before her tailbone hurt, and her nausea

medication that caused sleepiness and lack of focus. (Tr. 244) Plaintiff reported easy confusion and an inability to remember words. (Tr. 244) Plaintiff had a "constant headache" from waking up until going to bed, making it hard to "think or read." (Tr. 244) Plaintiff's employer reprimanded her for poor work due to mistakes in performing audits, forgetting the steps in procedures, and mistakes in her work reports. (Tr. 244)

Plaintiff activities of daily living included taking her medications, eating a small meal if her stomach was not hurting, attending to her personal care, and performing household chores such as washing the dishes and the laundry or vacuuming depending on her level of pain. (Tr. 245) Plaintiff paid her bills or watched television during the day. (Tr. 245) After an hour of sitting, Plaintiff stands and moves due to pain in her tailbone. (Tr. 245) Plaintiff was "constant[ly] up and down" and may have to lie down during the day. (Tr. 245)

Plaintiff denied caring for others (Tr. 245) Although Plaintiff's husband mostly cares for their pets, Plaintiff lets them outside and gives them food or water. (Tr. 245) Plaintiff sleeps very little due to constant pain. (Tr. 245) Plaintiff had no difficulties attending to her personal care. (Tr. 245) Plaintiff developed "memory loss," requiring alarms to remember her medications and appointments. (Tr. 246) Plaintiff's husband does most of the cooking but Plaintiff makes small meals for herself monthly. (Tr. 246)

Plaintiff performs household chores, like cleaning and laundry, for 45 to 60 minutes, three times a week. (Tr. 246) Cold temperatures cause pain in Plaintiff's body. (Tr. 247) Plaintiff's husband handles most of the shopping, but Plaintiff occasionally shopped for food, medicine, and household products on the phone or in stores about twice a month. (Tr. 247) Plaintiff paid bills, counted change, handled a saving account, and used a checkbook. (Tr. 247)

Plaintiff reads and watches television daily. (Tr. 248) Plaintiff socialized with others in person, over the phone, and via text and video chat once a month. (Tr. 248) Plaintiff attended family celebrations around ten times a year. (Tr. 248)

Plaintiff reported that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, concentrate, understand, and follow instructions. (Tr. 249) Plaintiff's conditions did not affect her ability to complete tasks or get along with others. (Tr. 249) Plaintiff can walk for 30 to 45 minutes before needing to rest for 5 minutes. (Tr. 249) Plaintiff failed to finish what she started; written instructions confused her; and she misunderstood verbal instructions. (Tr. 349) Plaintiff did not handle stress or changes in routine well. (Tr. 250) Plaintiff's medications induced sleepiness; she vomited with little warning; and defecated unexpectedly when having a bout of diarrhea. (Tr. 251) Plaintiff no longer walks, rides a bike, goes to amusement parks, or eats at restaurants. (Tr. 248)

C. Prior Administrative Medical Findings of the State Agency Consultants

The SSA's Disability Determination Explanation denying Plaintiff's initial claim for benefits, dated January 26, 2023, contains the opinions of two state-agency non-examining consultants. (Tr. 68-76) Paul Midden, PhD, opined Plaintiff had the non-severe mental impairments of depression and anxiety. (Tr. 70) Dr. Midden concluded Plaintiff's mental conditions resulted in mild limitations in the four areas of broad functioning. (Tr. 71) In support, Dr. Midden cited: (1) the medical evidence of record; (2) Plaintiff's use of psychotropic medications prescribed by her primary care physician but the lack of any inpatient psychiatric hospitalizations or receipt of outpatient mental health treatment; (3) the physical consultative examination documenting that Plaintiff had normal mood and affect, was cooperative and conversational, was alert and oriented, had intact short and long term memory, and was able to

follow the conversation and multi-step directions; and (4) Plaintiff's report that she had difficulty completing tasks, concentrating, and handling stress or changes to routine but no limitations to memory, understanding, following instructions, getting along with others, and performing self-care; and (5) Plaintiff's reported activities of daily living. (Tr. 71)

Donna McCall, DO opined Plaintiff had the severe impairments of degenerative disc disease, osteoarthrosis, obesity, chronic bronchitis, asthma, inflammatory bowel disease, and fibromyalgia. (Tr. 70) Dr. McCall found Plaintiff could perform work at the light exertional level with additional postural and environmental limitations. (Tr. 72-73) Specifically, Dr. McCall opined Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. (Tr. 73) Dr. McCall limited Plaintiff to only occasional stooping due to her degenerative disc disease of the lumbar spine. (Tr. 73) Dr. McCall opined Plaintiff should avoid concentrated exposure to extreme temperatures, wetness, humidity, and fumes due to Plaintiff's asthma and chronic bronchitis. (Tr. 73) In forming her opinion, Dr. McCall relied on the medical evidence of record, including a May 2021 MRI of Plaintiff's left ankle; April 2022 MRIs of Plaintiff's lumbar and cervical spines; a March 2022 nerve conduction study; medical treatment notes from September and November 2022; the December 2022 physical consultative examination; and Plaintiff's self-reported functioning and activities of daily living. (Tr. 74)

After the SSA's initial denial of benefits, Plaintiff sought reconsideration. The SSA's Disability Determination Explanation denying Plaintiff's claim for benefits at the reconsideration level, dated June 6, 2023, also contains the opinions of two state-agency non-examining consultants. (Tr. 77-85) Martin Isenberg, PhD, the psychology consultant, opined Plaintiff had the non-severe impairments of depression and anxiety, and that Plaintiff had mild limitations in the

four broad functional areas. (Tr. 79-80) Like Dr. Midden, Dr. Isenberg based his opinion on the medical evidence of record; Plaintiff's treatment; observations made during the physical consultative examination; and Plaintiff self-reported limitations and activities of daily living. (Tr. 80)

Jerome Piontek, MD opined Plaintiff had the severe impairments of degenerative disc disease, osteoarthrosis, obesity, chronic bronchitis, asthma, inflammatory bowel disease, and fibromyalgia. (Tr. 79) Dr. Piontek concluded Plaintiff could work at the light exertional level, occasionally lifting twenty pounds; frequently lifting 10 pounds; and standing and/or walking six hours in an eight-hour period; and sitting six hours in an eight-hour period. (Tr. 81) Dr. Piontek included postural limitations of occasional stooping, kneeling, and crawling based on Plaintiff's degenerative disc disease of the lumbar spine. (Tr. 82) Dr. Piontek also included environmental limitations based on Plaintiff's asthma, chronic bronchitis, and fibromyalgia, opining Plaintiff should avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes, and hazards. (Tr. 82) In support, Dr. Piontek cited objective medical testing including the May 2021 MRI of Plaintiff's left ankle, a March 2022 nerve conduction study, and April 2022 MRIs of Plaintiff's lumbar and cervical spines; treatment notes from October 2021 through April 2023; the December 2022 report of the physical consultative examiner; and Plaintiff's reported functioning and activities of daily living. (Tr. 82-83)

D. Medical Records

The record also includes medical records dated April 15, 2021, through December 1, 2023 were presented to the ALJ.[1] (Tr. 293-674)

## III. Standards for Determining Disability Under the Social Security Act

[1] The relevant medical records are discussed in detail below.

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. *Id.* Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a), (c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d)

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 404.1520(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Id.* (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a), (f); *see McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. § 404.1520(g).

## IV. ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since May 1, 2022, the alleged onset date; and (2) had the severe impairments of fibromyalgia, degenerative changes to the cervical and lumbar spines, bilateral sacroiliac arthropathy, and sacroiliitis. (Tr. 16) The ALJ concluded Plaintiff had the non-severe impairments of gastroesophageal reflux disease (GERD), irritable bowel syndrome (IBS), gastritis,

fatty liver, chronic bronchitis/asthma, right foot neurapraxia dysesthesia capsulitis, major depressive disorder, and generalized anxiety disorder. (Tr. 17-18) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20-21)

The ALJ completed the psychiatric review technique that the regulations prescribe for assessing the severity of a claimant's mental impairments.[2] The ALJ found Plaintiff's mental impairments did not meet or medically equal the criteria of the 12.04 listing of impairments because Plaintiff demonstrated only mild limitations in the four broad functional areas under paragraph B of the listings. (Tr. 18-19)

Based on his review of the record, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 22) Specifically, the ALJ found Plaintiff's alleged debilitating neck and back pain were inconsistent with the objective medical evidence, including April 2022 imaging demonstrating mild degenerative disc disease at C4-C5 and C5-C6 with no stenosis and mild degenerative disc disease at L4-L5 with mild facet arthropathy at L3-L4 and L4-L5; and April 2023 imaging demonstrating

[2] When a claimant has a mental impairment, the Social Security Act requires the ALJ to employ the psychiatric review technique when evaluating the severity of the claimant's mental impairments. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520a(a), 416.920a(a)). The psychiatric review technique requires the Commissioner to "first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Id.* at 1118 (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)). The Commissioner then rates "the degree of functional limitation" in the following four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c).

some discogenic degenerative changes in the lower spine but no evidence of sacroiliitis, osteoarthritis, osseous ankylosis or cortical erosion, and multilevel mild disc bulge and facet arthropathy from L3-L4 to L5-S1 resulting in mild foraminal stenosis but no canal stenosis. (Tr. 23) The ALJ also considered Plaintiff's reports of pain; conservative treatment; and physical examinations demonstrating decreased lumbar range of motion with tenderness at numerous points but a non-antalgic gait, normal muscle strength, and intact sensation. (Tr. 22) With respect to Plaintiff's fibromyalgia, the ALJ considered Plaintiff's follow up examinations in April and October 2023, after a four-year lapse in examinations, during which she reported worsening neck and back pain that was improved by swimming and, aside from spinal and bilateral ankle tenderness with mild edema, her examinations were normal and she exhibit full strength. (Tr. 23)

The ALJ further considered the physical consultative examination conducted in December 2022 and the prior administrative medical findings. (Tr. 22-23) The ALJ found Dr. Midden's and Dr. Isenberg's opinions regarding Plaintiff's limitations from her mental conditions to be persuasive as supported by their professional psychological knowledge and citations to the record, and consistent with the record as a whole. (Tr. 23) The ALJ found Dr. McCall's opinion to be unpersuasive despite being supported by some citations to the record, finding the opinion was inconsistent with the record as a whole, which the ALJ concluded merited additional postural and environmental limitations. (Tr. 24) The ALJ found Dr. Piontek's opinion to be persuasive as supported by his professional medical knowledge and citations to the record, and consistent with the records as a whole. (Tr. 24)

The ALJ determined Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b)[3] with the following additional limitations:

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR §404.1567(b). Further, "a job is in this category when it

> She can only occasionally stoop, kneel and crawl; must avoid concentrated exposure to extreme cold, extreme heat, wetness humidity, fumes, odors, dusts, gases, poor ventilation; and must avoid even moderate exposure [to] hazards such as moving machinery and unprotected heights.

(Tr. 21)

At step four, the ALJ stated Plaintiff could perform her past relevant work in the composite job of branch manager, loan officer, and teller. (Tr. 24-25) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 25)

## V. Discussion

Plaintiff argues the ALJ failed to properly evaluate the prior administrative medical findings of the state agency consultants and Plaintiff's subjective complaints of pain, specifically with respect to her fibromyalgia. [ECF No. 17] Plaintiff further contends the ALJ's RFC determination is not supported by substantial evidence because the ALJ adopted the opinion of Dr. Piontek, a non-examining state agency consultative physician. [ECF No. 17]

The Commissioner responds that the ALJ properly evaluated the prior administrative medical findings, and Plaintiff's fibromyalgia and associated reported symptoms and pain. [ECF No. 20] The Commissioner further asserts that the ALJ's RFC is supported by sufficient evidence and that the ALJ properly evaluated the prior administrative medical findings; the objective medical evidence and medical progress notes; and Plaintiff's treatment, subjective complaints, and reported activities of daily living in determining the RFC. [ECF No. 20]

---

requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." *Id.* The regulation also incorporates the definition of light work as found in the Dictionary of Occupational Titles published by the Department of Labor, which defines the phrase as "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly[, constantly meaning 2/3 or more of the time) to move objects." Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991).

Social Security Rule 83-10 further explains that light work involves standing or walking, off and on, "for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (Soc. Sec. Admin. Jan. 1, 1983).

A. <u>Standard of Judicial Review</u>

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id.* (quoting *Prosch*, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. <u>Evaluation of Prior Administrative Medical Findings</u>

The ALJ evaluates medical opinions and prior administrative medical findings under 20 C.F.R. §§404.1520c, 416.920c, which provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Rather, the ALJ will consider all medical opinions according to several enumerated factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the

length of treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of treatment, and the examining relationship; (4) the medical source's specialization; and (5) other relevant factors such as the medical source's familiarity with the other evidence and the source's understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c (a), (c); 416.920c (a), (c).

The ALJ must articulate in his determination how persuasive he finds all the medical opinions and prior administrative medical findings in the case record. 20 C.F.R. §§ 404.1520c (b), 416.920c (b). The most important factors are supportability and consistency, and the ALJ must explain in his determination how he considered these factors for each medical source's medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c (a), (b)(2); 416.920c (a), (b)(2). *Dornbach v. Saul*, 4:20-CV-36 RLW, 2021 WL 1123573, at *4 (E.D. Mo. Mar. 24, 2021). Generally, the ALJ is not required to explain his consideration of the remaining factors.[4] 20 C.F.R. §§ 404.1520c (b)(2); 416.920c (b)(c); *Martini v. Kijakazi*, 4:20-CV-1711-CDP, 2022 WL 705528, at * 4 (E.D. Mo. Mar. 9, 2022); *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. *Daniels v. Kijakazi*, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D. N.Y. July 26, 2022).

---

[4] The ALJ must articulate his consideration of the remaining factors when two or more medical opinions or prior administrative medical findings about the same issue are not exactly the same and both opinions are equally well supported and consistent with the record. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" *Daniels*, 2022 WL 2919747, at *5 (quoting *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (S.D. N.Y. Jan. 29, 2021).

1. Opinions of Dr. Paul Midden and Dr. Martin Isenberg

Plaintiff argues the ALJ failed to properly assess the supportability of Dr. Midden's and Dr. Isenberg's opinions because the ALJ did not evaluate the consultants' supportive explanations or the objective medical evidence supporting the opinions. [ECF No. 17] Dr. Midden and Dr. Isenberg, both psychologists, concluded the medical record of evidence supported the diagnosis of anxiety and depression but that these conditions were non-severe because they resulted in only mild limitations to Plaintiff's functioning. (Tr. 70, 80) In support, they cited Plaintiff's conservative mental health treatment, reported observations during Plaintiff's consultative physical examination, and Plaintiff's self-reported functioning and activities of daily living. (Tr. 71, 80) Specifically, they noted Plaintiff's use of psychotropic medications prescribed by her primary care physician but lack of any inpatient psychiatric hospitalization or outpatient mental health treatment. (Tr. 71, 80) During the consultative physical examination, Plaintiff exhibited normal mood and affect, was cooperative and conversational, was well-attended to her personal hygiene, was alert and oriented, exhibited intact long- and short-term memory, and was able to follow the conversation and multi-step directions. (Tr. 71, 80) Dr. Midden and Dr. Isenberg also

considered Plaintiff's reported difficulty completing tasks and concentrating, and inability to handle stress and changes to routine but that she did not assert any limitations in memory, understanding, following instruction, or getting along with others. (Tr. 71, 80) Plaintiff reported no difficulty performing her self-care needs, preparing meals, cleaning, doing laundry, driving, shopping, or paying bills. (Tr. 71, 80)

The ALJ found the opinions of Dr. Midden and Dr. Isenberg persuasive because they were supported by their "respective professional psychological knowledge and citations to the record." (Tr. 23) The ALJ also found their opinions to be consistent with the record as a whole, which the ALJ concluded did not reflect more than mild limitations in the four mental functioning domains, as evidenced by metal status exams consistently showing appropriate grooming and hygiene, and that Plaintiff was alert, oriented, cooperative, with clear speech, intact memory, normal mood and affect, and the ability to follow conversation and multistep directions. (Tr. 23-24)

Contrary to Plaintiff's assertions, the ALJ weighed the appropriate factors in assessing Dr. Midden and Dr. Isenberg's opinions, considering their specialization as well as the supportability and consistency of their opinions. Here, the consultants cited to specific evidence in the record supporting their opinions, which the ALJ concluded supported their explanations in support of their opinions. *Daniels,* 2022 WL 2919747, at *5 (supportability is an assessment of how well a medical source supported and explained his or her opinion).

2. <u>Dr. Donna McCall's Opinion</u>

Plaintiff argues that the ALJ failed to properly evaluate the supportability and consistency of Dr. McCall's opinion because the ALJ "provides no examples of objective medical evidence or supporting explanations to support the opinion nor does he identify any specific findings or evidence from other medical sources and non-medical sources in the claim that are inconsistent

with the opinion, only that the ALJ felt that subsequent evidence required additional limitations in the RFC." Dr. McCall opined Plaintiff had the severe impairments of degenerative disc disease, osteoarthrosis, obesity, chronic bronchitis, asthma, inflammatory bowel disease, and fibromyalgia. (Tr. 70) Dr. McCall found Plaintiff could perform work at the light exertional level with additional postural and environmental limitations, including only occasionally stoop and avoiding concentrated exposure to extreme temperatures, wetness, humidity, and fumes. (Tr. 73) Dr. McCall limited Plaintiff's stooping due to degenerative disc disease of the lumbar spine and imposed the environmental limitations due to Plaintiff's asthma and chronic bronchitis. (Tr. 73) In support, Dr. McCall cited to the medical evidence of record, including MRI imaging from May 2021 and April 2022; a March 2022 nerve conduction study; medical treatment notes from September 2022 and November 2022; and the December 2022 physical consultative examination. (Tr. 74) Dr. McCall also considered Plaintiff's self-reported functioning and activities of daily living. (Tr. 74)

The ALJ found Dr. McCall's opinion was supported by her professional medical knowledge and some citations to the record, but that her opinion was unpersuasive as inconsistent with the record as a whole. (Tr. 24) Specifically, the ALJ found the record as a whole, which documented Plaintiff's degenerative disc disease and associated neck and back pain, and drowsiness from medication, supported: (1) additional postural limitations of occasional kneeling and crawling, and (2) additional environmental limitations of avoiding moderate exposure to hazards such as moving machinery and unprotected heights. (Tr. 24)

Here, Dr. McCall's explanation in support of her opinion included numerous citations to the record in support of her opinion, and the ALJ specifically found those citations supported Dr. McCall's assessment. In evaluating the consistency of the opinion, the ALJ concluded Dr.

McCall's opinion was inconsistent with the evidence of record as a whole. In making this assessment, the ALJ considered and cited Plaintiff's hearing testimony, function reports, and medical records as supporting a finding that Plaintiff's degenerative disc disease and Plaintiff's reports of pain and drowsiness warranted additional postural and environmental limitations. Plaintiff's contention that the ALJ failed to sufficiently support his analysis of the supportability and consistency of Dr. McCall's opinion is without merit.

3. Dr. Jerome Piontek's Opinion

Plaintiff contends the ALJ made "no effort to evaluate the opinion" of Dr. Piontek, failing to follow the regulations' requirements for evaluating the persuasiveness the prior administrative medical finding by analyzing the supportability and consistency of the finding. [ECF No. 17]

Dr. Piontek concluded plaintiff could work at the light exertional level, occasionally lifting twenty pounds, frequently lifting ten pounds, and standing and/or walking six hours in an eight-hour period, and sitting six hours in an eight-hour period. (Tr. 81) Dr. Piontek included postural limitations of occasional stooping, kneeling, and crawling; and environmental limitations to avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes, and hazards. (Tr. 82) Dr. Piontek included the postural limitations based on Plaintiff's degenerative disc disease of the lumbar spine and the environmental limitations based on Plaintiff's asthma, chronic bronchitis, and fibromyalgia. (Tr. 82) In support, Dr. Piontek cited: (1) objective medical testing including the May 2021 MRI of plaintiff's left ankle, a March 2022 nerve conduction study, and April 2022 MRIs of Plaintiff's lumbar and cervical spines; (2) treatment notes from October 2021 through April 2023; (3) the report from the December 2022 physical consultative examination; (4) and Plaintiff's reported functioning and activities of daily living. (Tr. 82-83)

The ALJ found Dr. Piontek's opinion to be persuasive as supported by his professional medical knowledge and his citations to the record, and consistent with the records as a whole. (Tr. 24) Contrary to Plaintiff's assertions, the ALJ considered the supportability and consistency of Dr. Piontek's opinion in determining its persuasiveness. Dr. Piontek cited to specific evidence of record in supporting his opinion, which the ALJ found to be supportive of Dr. Piontek's opinion. Further, the ALJ found his opinion to be consistent with the evidence of record as a whole, citing Plaintiff's hearing testimony, function reports, and medical records. Plaintiff's contention that the ALJ failed to sufficiently support his analysis of the supportability and consistency of Dr. Piontek's opinion is inconsistent with the record.

C. Plaintiff's Subjective Complaints

Plaintiff argues the ALJ failed to make a proper pain evaluation and to adequately support the evaluation with an analysis of the relevant factors. [ECF No. 17] Specifically, Plaintiff contends the ALJ failed to consider Plaintiff's work history; the duration, frequency, and intensity of Plaintiff's pain; and the dosage, effectiveness, and side effects of her medications. [ECF No. 17] Plaintiff contends the ALJ erred by discounting Plaintiff's subjective complaints of pain and disabling symptoms as inconsistent with the objective medical evidence because fibromyalgia "consists of a constellation of symptoms associated with few physical findings and essentially normal laboratory results." [ECF No. 17] The Commissioner counters that the ALJ considered the relevant factors in assessing Plaintiff's subjective complaints and in evaluating Plaintiff's complaints related to her fibromyalgia. [ECF No. 20]

When determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017). While an ALJ cannot ignore a

claimant's subjective complaint, *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984), it may discount those complaints if "they are inconsistent with the evidence as a whole." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015). In discounting a claimant's subjective complaints, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *Renstrom*, 680 F.3d at 1066. The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. *Id.* at 1065–66; *see also* 20 C.F.R. § 404.1529(c). While an ALJ must consider these factors, she need not discuss how each factor supports her determination.[5] *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). If an ALJ "explicitly discredits" a claimant's complaints and "gives a good reason for doing so," a court should defer to her determination. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

[5] Social Security Rule 16-3p, effective March 28, 2016, also sets forth factors, similar to those in *Polaski*, relevant to the ALJ's evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms and the ALJ's "analysis of whether a claimant's subjective complaints are consistent with the medical evidence." SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017); *Noerper v. Saul*, 964 F.3d 738, 745 (8th Cir. 2020); *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020). If a claimant makes statements about the intensity, persistence, and limiting effect of her symptoms, SSR 16-3p requires the ALJ to determine whether the statements are consistent with the medical and other evidence of record. SSR 16-3p, 2017 WL 5180304, at *8; *see also* 20 C.F.R. § 416.929(c)(3) (explaining how the SSA evaluates symptoms, including pain). While SSR 16-3p eliminates the use of the term "credibility" in examining a claimant's subjective complaints and clarifies that the Commissioner's review is an examination for the level of consistency between a claimant's subjective assertions and the balance of the record as a whole, SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" under *Polaski*. *Noerper*, 964 F.3d 738, 745 n. 3 (8th Cir. 2020).

Social Security Ruling 12-2p provides guidance on how SSA evaluates fibromyalgia. SSR 12-2p, 2012 WL 3104869, at * 1 (Soc. Sec. Admin. July 25, 2012). "In establishing the existence and severity a claimant's impairment from fibromyalgia, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful[.]" SSR 12-2p, 2012 WL 3104869, at *4. Ruling 12-2p provides guidance on how the SSA evaluates the intensity and persistence of the claimant's pain and other symptoms, stating:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.

SSR 12-2p, 2012 WL 3104869, at *5.

The ALJ observed that Plaintiff reported nausea, uncontrolled bowel movements, constant daily headache, and difficulty sitting for long periods, staying awake, being accurate in her work, thinking or reading, talking, remembering, taking medication without reminders, tolerating cold, lifting more than ten pounds, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, concentrating, understanding, following instructions, and handling stress and changes in routine. (Tr. 21)

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptom were inconsistent with the evidence of record, including Plaintiff's self-reported activities of daily living, objective medical testing such as imaging and nerve conduction tests, medical treatment notes, conservative treatment, the consultative examination in December 2022, and the prior administrative medical findings. (Tr. 21-23) Specifically, the ALJ found Plaintiff's

alleged debilitating neck and back pain were inconsistent with the objective medical evidence, including: (1) April 2022 MRIs demonstrating mild degenerative disc disease at C4-C5 and C5-C6 with no stenosis and mild degenerative disc disease at L4-L5 with mild facet arthropathy at L3-L4 and L4-L5; (2) an April 2023 pelvic x-ray demonstrating some discogenic degenerative changes in the lower spine but no evidence of sacroiliitis, osteoarthritis, osseous ankylosis or cortical erosion; and (3) an April 2023 MRI showing multilevel mild disc bulge and facet arthropathy from L3-L4 to L5-S1 resulting in mild foraminal stenosis but no canal stenosis. (Tr. 22-23)

The ALJ observed that Plaintiff reported being able to perform her personal care, prepare simple meals, perform household chores, manage funds, watch television, care for pets, drive, go out alone, shop in stores and by phone, read, spend time with others, attend family celebrations, and get along with others. (Tr. 21-22) The ALJ also considered Plaintiff's reports of pain, conservative treatment, and physical examinations demonstrating decrease lumbar range of motion with tenderness at numerous points but a non-antalgic gait, normal muscle strength, and intact sensation. (Tr. 22) With respect to Plaintiff's fibromyalgia, the ALJ considered Plaintiff's follow-up examinations in April and October 2023, after a four year lapse, during which she reported worsening neck and back pain that was improved by swimming and, aside from spinal and bilateral ankle tenderness with mild edema, normal physical examinations including full strength. (Tr. 23) The ALJ further considered the physical consultative examination conducted in December 2022 and the prior administrative medical findings. (Tr. 22-23)

Here, Plaintiff's subjective complaints of debilitating pain were inconsistent with the medical evidence as a whole, Plaintiff's treatment, and Plaintiff's self-reported activities of daily

living. Because the ALJ considered the necessary factors and provided good reasons for discounting Plaintiff's testimony, the Court defers to the ALJ's determination.

D. Physical RFC

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because the RFC is the same as the opinion of Dr. Piontek. [ECF No. 17] Plaintiff asserts the ALJ cannot rely on Dr. Piontek's opinion because he is a non-examining state agency consultant who completed his assessment five months prior to the hearing, did not examine all of the records on file, and did not explain how the evidence available to his supported the limitations. [ECF No. 17] Plaintiff further contends that the opinions of non-examining consultants, categorically, are not entitled to significant weight and, standing alone, cannot constitute substantial evidence in support of an RFC determination. [ECF No. 17] The Commissioner counters that the ALJ is entitled to rely on the opinions of the state agency consultants even when evidence in the record post-dates the consultant's opinion. [ECF No. 20]

RFC is the most a claimant can do in a work setting despite the claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. §404.1545(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 404.1545(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be

supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)

Contrary to Plaintiff's assertions, "state agency physicians are experts qualified to provide opinions on a claimant's functional limitations based on a review of the record." *Pamela M. v. Bisignano*, No. 4:25-CV-1555 SRW, 2026 WL 2754078, at *4 (E.D. Mo. Sept. 17, 2026) (citing 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (2017) (noting that state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation). Further, the Social Security regulations do not restrict the time period during which a report must be generated for an ALJ to rely on it. *Pamela M.*, 2026 WL 2754078, at *4 citing *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").

The relevant time period in this case is from May 1, 2022, the alleged onset date, to February 2, 2024, the date the hearing decision was issued. Dr. Piontek's June 2023 report falls within this time period. The fact that the Plaintiff underwent additional treatment following Dr. Piontek's report does not invalidate the opinion or render it unworthy of probative value. Plaintiff points to no specific evidence demonstrating that Plaintiff underwent a significant change in condition after Dr. Piontek's opinion that would have impacted his opinion regarding her limitations. See *Bollinger o.b.o Bollinger v. Saul*, No. 1:19 CV 124 RWS, 2020 WL 4732042, at *3 (E.D. Mo. Aug. 14, 2020). *See also Asbury v. Kijakazi*, No. 4:20-cv-01793-SRC, 2022 WL 1288354, at *4 (E.D. Mo. Apr. 29, 2022) ("[E]ven if the passage of time between the date of the [doctor's] assessments and the date of the ALJ's decision was relevant to the analysis—which it

is not—[Plaintiff] points to no new evidence in the intervening seventeen-month period that could arguably render the ALJ decision not supported by substantial evidence.”). Further, the ALJ was aware of Plaintiff's treatment following Dr. Piontek's opinion as the medical record and evidence related to those events was in the record before the ALJ.

Here, in assessing Plaintiff's functional limitations and Plaintiff's RFC, the ALJ considered not only Dr. Piontek's findings but also the medical records; the other prior administrative medical findings; and Plaintiff's testimony and self-reported functioning and activities of daily living. Upon review of the record as a whole, the Court finds substantial evidence supports the ALJ's determination that Plaintiff was capable of light work with additional postural and environmental limitations.

## VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of November, 2026